# EXHIBIT C

*(Report and Recommendation dated Oc. 8, 2024, Donlon Acceptance, and Response Email)*

# *Police Dep't v. Anonymous*

OATH Index No. 582/24 (Oct. 8, 2024)

Petitioner proved that respondent is unfit to perform her duties as an associate staff analyst. Leave of absence under section 72 of the Civil Service Law recommended.

---

**NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS**

*In the Matter of*
**POLICE DEPARTMENT**
*Petitioner*
*- against -*
**ANONYMOUS**[1]
*Respondent*

---

## REPORT AND RECOMMENDATION

**TIFFANY HAMILTON**, *Administrative Law Judge*

Petitioner, the Police Department (the "Department"), brought this proceeding pursuant to section 72 of the Civil Service Law, alleging that respondent, an associate staff analyst ("ASA"), should be placed on an involuntary leave of absence because she is mentally unfit to perform the duties of her position (ALJ Ex. 1). Respondent denied that she is mentally unfit.

Trial was held before me on May 21, 23, and 29, 2024. Respondent appeared without counsel and informed the tribunal that she is licensed to practice law in New York. Notwithstanding, pursuant to rule 103(A)(8) of Appendix A to title 48 of the Rules of the City of New York, I advised respondent of her right to be represented by an attorney. I also explained the nature and procedural aspects of the hearing. Respondent elected to proceed *pro se* and without further adjournment of the trial.[2]

---

[1] Respondent's name has been withheld from publication to protect her privacy because this report discusses her mental health. See 48 RCNY § 1-49(d) (Lexis 2024); *Admin. for Children's Services v. Anonymous*, OATH Index No. 212/12 at 1 (Dec. 15, 2011).

[2] Respondent was previously represented by Len Shrier, Esq. and Richard Washington, Esq., both of whom withdrew on consent on December 7, 2023 and January 9, 2024, respectively. The hearing was then adjourned multiple times, at respondent's request, to allow her the opportunity to seek counsel.

Petitioner relied on documentary evidence and the testimony of four witnesses: Dr. Christine Gille, Senior Police Administrative Aide Kevin Mamakas, Detective Rashad Vandross[3], and Lieutenant Gasser Antonios Boctor. Respondent relied on documentary evidence and testified on her own behalf.

For the reasons set forth below, I find that petitioner proved that respondent is unfit to perform the duties of her position and recommend that she be placed on involuntary leave.

## **ANALYSIS**

*Background*

Petitioner hired respondent as an ASA in April 2019. She first worked in the Department's Compliance Division, but was transferred to the Project Management Office, the Transportation Bureau, and finally, the Personnel Bureau, where she is currently assigned (Pet. Ex 5; Tr. 383). Respondent is responsible for conducting economic research, analyzing data, preparing operational studies, administering agency budgets, and performing other tasks related to the Department's personnel administration (Pet. Ex. 1; Tr. 384-85, 769).

In April 2023, while respondent was assigned to the Transportation Bureau, her supervisors grew concerned about her mental fitness and ability to perform her job duties (Pet. Exs. 5, 7). Her attendance was poor, she engaged in verbal disputes with colleagues, and her work performance was below standard (*Id.*). For example, she displayed disruptive behavior on August 25, 2022, when she attempted to gain access to a meeting in the Criminal Justice Bureau through a back door, even though she did not work in this bureau and her supervisor had specifically told her she could not attend (Pet. Ex. 5). Respondent's colleagues also reported that she frequently spoke of "intelligence gathering" and witchcraft (Pet. Ex. 7; Tr. 547). Her supervisors reported her behavior to the Department's Internal Affairs Bureau ("IAB") for further investigation, and the incidents were logged in her personnel file (Pet. Exs. 5, 13).

After learning of respondent's behavior, the chief of the Transportation Bureau referred her for a fitness evaluation (Pet. Ex. 7). The first of three visits with Dr. Janelle Rondeau, a Department psychologist, took place on April 13, 2023. Dr. Rondeau noted that respondent's

---

[3] Detective Vandross testified for the sole purpose of authenticating one of petitioner's exhibits, an IAB logbook (Pet. Ex. 13).

"thought process was logical and coherent at times" but "illogical when discussing [the D]epartment" (Pet. Ex. 7). On April 24, 2023, respondent was transferred to the Department's Personnel Bureau.

After the transfer, Dr. Rondeau met with respondent on April 25, 2023, and May 31, 2023. Respondent's new supervisors initially reported that she performed well in her new work assignment (*Id.*). Based in part on this feedback, in a report dated May 31, 2023, Dr. Rondeau deemed respondent psychologically fit to work in the Personnel Bureau and closed her case with no recommended follow-up (*Id.*).

Around June 2023, respondent's supervisors and colleagues in the Personnel Bureau noticed that she had begun engaging in the same worrisome conduct reported by her supervisors in the Transportation Bureau—excessive absences, disputes with colleagues, and a failure to perform her job duties (Pet. Ex. 5; Tr. 386, 397-98). Particularly troubling was the fact that respondent sent her supervisor, Lieutenant Gasser Antonios Boctor, emails and text messages almost daily about a theory on which she seemed fixated: the Department was practicing witchcraft against her (Pet. Exs. 9, 10). In July 2023, Lieutenant Boctor referred respondent for a Fitness for Duty examination (ALJ Ex. 1). Dr. Gille evaluated respondent on July 25, 2023, and in a report dated August 11, 2023, found her unfit for duty (Pet. Ex. 6). The Department then filed the subject petition and placed respondent on emergency leave (ALJ Ex. 1; Pet. Ex. 5).

*Preliminary Matter – Waiver*

The petition was filed on August 23, 2023, and received by the tribunal the following day (ALJ Ex. 1). In an email sent on August 24, 2023 to petitioner's attorneys, on which the tribunal was copied, Adam Orgel, Vice-Chairperson of the Organization of Staff Analysts ("OSA"), confirmed union representation and indicated that respondent was waiving her right to a hearing within 30 days of the notice and issuance of the final agency decision within 75 days of the receipt of the request for review (ALJ Ex. 11). Petitioner references this waiver in a footnote on the first page of the petition, but the first written evidence of the waiver is the August 24, 2023 email from Mr. Orgel (ALJ Ex. 1). Relying on the OSA's written representation, the tribunal scheduled the first pre-trial conference for October 3, 2023, and the trial for October 17, 2023.

In an email dated October 5, 2023, Mr. Shrier, respondent's attorney at the time, requested an adjournment of the trial for personal reasons. When making this request he ratified respondent's

waiver, noting that she had "filed a notice waiving her right to a hearing within 30 days of the filing of her request for a hearing and waiving the 75-day limitation on the agency issuing its final determination" (ALJ Ex. 4). Respondent does not dispute that OSA represented her at the time of the initial waiver, or that Mr. Shrier represented her when he ratified the waiver.

Respondent, who was not copied on the August 4, 2023 email from her union or the October 5, 2023 email from her attorney, later claimed she did not consent to a waiver of the deadlines. She raised the issue in a document she submitted to the tribunal on December 19, 2023, entitled "Motion to Dismiss, or Alternatively, Answer and Counterclaim," and presented this argument as a defense at trial.

Section 72(1) requires the appointing authority to schedule a trial within 30 days of the request. Like any other rights, in any other tribunal, this time limit can be waived by respondent's counsel or agent on behalf of respondent. *See New York v. Hill*, 528 U.S. 110, 115 (2000) (upholding a waiver of a statutory 180-day trial deadline that was made by counsel but contested by the respondent, finding that unlike "certain fundamental rights" that require a personal, informed waiver, "[s]cheduling matters are plainly among those for which agreement by counsel generally controls"); *Cf. Matter of Williams v. Troiano*, 129 A.D.3d 1601 (4th Dep't 2015) (restoring benefits and ordering back pay for an employee who was not informed of section 72 leave for nearly eight months after he was removed from duty, from the date of the imposition of leave to the date of the agency's post-hearing determination, where neither the employee nor his representative waived his rights). Section 72(1) does not specifically require that a waiver of deadlines be communicated or ratified by a respondent; attorneys and other representatives regularly waive these deadlines on behalf of their clients. Respondent, like similarly situated employees, may benefit from such waivers by receiving more time to engage in settlement negotiations, seek new counsel, or prepare for trial.

Here, both respondent's union and her attorney, who had apparent authority to act on her behalf, informed opposing counsel and this tribunal in writing that she had waived both of the Section 72 deadlines. Still, her claim that she did not consent to this waiver raises a question of fact requiring a credibility determination.

Respondent asserts that on August 23, 2023, the date on which the petition states that she waived the deadlines, "she was still under [the] impression that we were going to have a hearing" (Tr. 818; Resp. Ex. AK). However, there is neither testimony nor documentary evidence that she

informed this tribunal that she opposed the waiver when she learned that the conference and trial were scheduled outside of the 30-day period.

In addition, although respondent claims that she did not consent to a waiver and wanted a prompt trial, this assertion is at odds with her actions throughout the course of these proceedings, where she made or consented to seven adjournment requests (ALJ Exs. 4-11). Specifically, respondent requested an adjournment of the following trial dates: December 19 and 20, 2023; January 24 and 25, 2024; February 27 and March 4, 2024; March 21 and 24, 2024; and March 26 and April 19, 2024. She made her first adjournment request on December 18, 2023, the day before her "Motion to Dismiss, or Alternatively, Answer and Counterclaim," in which she asserted that she did not consent to the waiver. She made her final adjournment request at 5:11 a.m. on the morning of March 26, 2024, with the in-person trial scheduled to commence a few hours later, at 9:30 a.m. Respondent had the opportunity to begin the trial on each of these scheduled dates but chose not to. While an adjournment request is not an explicit waiver, her repeated requests for a delay of the proceedings call into question her contention that she wanted a trial and decision within the prescribed timelines.

In short, based on the entire record, including respondent's request for multiple adjournments, I did not credit respondent's claim that she did not consent to a waiver of the timelines, and am not persuaded that the petition should be dismissed on this basis.

*Petitioner's Evidence*

Lieutenant Antonios Boctor testified that he served as respondent's supervisor in the Personnel Bureau between April 2023 and July 2023 (Tr. 385). He initially found her work above standard, describing her as a "superstar" (Tr. 421). However, toward the end of May 2023, he noticed changes in respondent's behavior (Tr. 386). She had begun sending him and other staff members "disturbing" and "unstable" text messages and emails, claiming to be under surveillance as part of the Department's "witchcraft program" (Pet. Exs. 9, 10, 11; Tr. 386, 399-400). She sent these messages almost daily, sometimes multiple times per day, and most of them did not relate to the substance of her work as an associate staff analyst (Tr. 407). The messages sometimes included photographs of people on the street, in the subway, or inside One Police Plaza (Pet. Exs. 9, 10; Tr.

387). Respondent would inquire about these individuals, asking Lieutenant Boctor if they were "witches," or under the Department's control (Pet. Ex. 10; Tr. 390, 405).

Below are examples of text messages and emails respondent sent to Lieutenant Boctor in the summer of 2023:

*Text messages*

> "Lt, I believe the tall, skinny, white haired man kept me up all night using witchcraft. I believe he is looking for anything to block me. I barely got any sleep. It is also my understanding that you told him to do it so that I cannot go to the 14.[4] Is that true? I have to go to church today. This game has gotten out of control. First of all, it's illegal. I did not consent to this process which is required by federal law. And the department is not doing a criminal investigation. Secondly, I wasn't focused on going to 14. But I am focused on no longer being under this witchcraft, voodoo, medium, etc" June 20, 2023 at 05:21.

> "Lt., I need to change my tour today and come in late. Someone is using voodoo/black magic/witchcraft to steal." June 27, 2023 at 05:35.

> "Lt., who is the witch? He has to go. I don't know that he is mentally stable. And I'm being serious." July 11, 2023 at 19:08.

> "Lt, are they still playing the witchcraft game? I'm not playing. The medium who's in now has really dry mouth." July 20, 2023 at 12:46.

> "Lt, Sorry to bother you but the guy whose mustache looks like a porn star is keeping me up, maybe from CJB.[5] This is why I couldn't be in the office." July 21, 2023 at 01:33.

> "Lt., the witch stole my pension check, possibly shortened my paycheck, disconnected my internet, and stole money from Chick Fil A by double charging me. Who is the witch?" July 23, 2023 at 01:09.

> "I've already been violated by this process and I don't want anything to do with black magic. Also, the witch that keeps following me needs to learn to do his own work. I'm not slave labor. He's white and privileged. He can scrape by like everyone else." July 24, 2023 at 04:59.

---

[4] Respondent had attempted to visit the Legal Department, located on the 14th floor of One Police Plaza, but was denied access. Security then called Lieutenant Boctor to inform him that she had attempted to gain access (Tr. 461-62).

[5] Criminal Justice Bureau

> "Please tell the pregnant person from CJB to leave. I'm getting nauseated." July 24, 2023 at 09:09.
>
> "Gm Lt, is Lester supposed to be here getting intel that doesn't relate to the job? I need my mind and body back. And I need the job to stop being so intrusive and worry about other matters." July 25, 2023 at 03:58.
>
> "Lt., the witches came by and fixed the AC that they broke but then other ones broke it again[.] And who is the heavy woman stealing? I just need her name." July 28, 2023 at 14:19.

(Pet. Ex. 10).

*Emails:*

> "While I can appreciate the department's denial of the existence of a witchcraft program, I know that it is true. It has been used to manipulate and control me and my situation . . . I would like to take to take a week off to recalibrate. As you know, I do not have leave. But I am not open to enduring anyone "connecting" or "accessing" my person while I am at the office. I particularly loathe it while I am sleeping." July 20, 2023 at 9:42.
>
> "For at least the past two years I have been subjected to some form of witchcraft as if it's a game to compete for opportunities for my promotion. During this time, I have had my property vandalized and/or stolen and my body attacked, all in the spirit of this game, a test of what I can endure. . . . I have been used by others to obtain positions for which they are less competent. And I believe that my body must be "connected" by a medium or witch so that others can perform better at jobs for which they are not qualified. God did not design me for that purpose. And it is a form of slavery or indentured servitude. It is being done against my will and my individual rights have been violated . . . And unless the department (along with every participating agency) stops using black magic that is perpetuating a hostile environment (even during my commute!), then I cannot come into the office." July 25, 2023 at 9:10.
>
> "I would text you from my phone but it is frozen. Would you be able to help me get the roster for the Advocate's Office? I am particularly interested in a young man (probably of Jewish ancestry) who is either recently divorced (or going through a divorce) and likely intimate with a young black woman in the same command

> (probably with braids). It is my understanding that they could have made plans together involving property that will never belong to them." July 30, 2023 at 19:30.
>
> "I don't know if this is true, but it seems that a member who is married to someone from MTA and has a 9 yr old has the idea that I am supposed to dispose of my house for a discount (received a letter in the mail shortly after my husband was gone) and has been using department resources to advance this agenda, including but not limited to causing property damage." August 18, 2023 at 12:10.

(Pet. Ex. 9)

During this period, respondent's work performance fell from exemplary to "well below standard" (Tr. 397). She was regularly late to or absent from work, blaming "witchcraft," "black magic," and "interference" (Pet. Ex. 10). She often claimed that personal items were stolen from her, and that the theft of these items prevented her from working (*Id.*). For example, on July 17, 2023, she claimed she could not go to work because her keys had been stolen by "someone who smokes cigarettes" (*Id.*). Lieutenant Boctor's role vis-à-vis the respondent changed from supervisor to "babysitter," and eventually, "the work stopped" altogether (Tr. 398, 418-19).

Senior Police Administrative Aide Kevin Mamakas currently works in the Department's Criminal Justice Bureau, located on the 6th floor of One Police Plaza (Tr. 231). He has been employed by the Department for eight years, and does not know respondent or work with her in any capacity (Tr. 231, 252-53). On July 25, 2023, he was on the 6th floor when he observed respondent walking in his direction as he was headed to the bathroom (Tr. 232-33, 238). As respondent drew closer, he heard her say, "What the fuck are you looking at? Get the fuck away from me" (Tr. 239).[6] He turned left to continue toward the bathroom, and respondent walked in the same direction (Pet. Ex. 23; Tr. 240). Mr. Mamakas entered the bathroom and remained there for a few minutes (Tr. 240). When he exited the bathroom, he saw respondent again and heard her say, "Stop fucking following me . . . or I'm going to beat the shit out of you" (Tr. 241). He was shocked at what he heard, particularly given that he had not approached respondent and had never interacted with her (Pet. Ex. 12; Tr. 242, 251-52).

[6] Mr. Mamakas was unable to recall his exact distance from respondent when he heard her speak, but marked their approximate locations on a rough diagram of the 6th floor of One Police Plaza (Pet. Ex. 23; Tr. 237).

Mr. Mamakas walked away from respondent, and as he did, something "clicked" in his head (Tr. 242). He recalled that a colleague had experienced a similar incident in the bathroom a few days earlier, where she was threatened by a female employee, identified in the IAB log as respondent (Pet. Ex. 13; Tr. 244-45, 247). He further recalled that the colleague "looked very, very shaken" after her encounter with respondent (Tr. 244). The unit supervisor, Captain Tierney, instructed Mr. Mamakas and his colleagues to report any similar occurrences (Tr. 243, 247). Therefore, following his encounter with respondent, Mr. Mamakas headed directly to Captain Tierney's office to report the incident (Tr. 247). He also emailed a summary of the encounter to Lieutenant Boctor (Pet. Ex. 12). He did not wish to report respondent to IAB (Tr. 299). Instead, he wanted respondent to get help, as he believed "[p]eople don't just go out and threaten someone for no reason . . . people do that when they need help and they don't know what to do to get it or . . . that they need it" (Tr. 299-300).

After learning of the 6th floor incident, Lieutenant Boctor referred respondent for a Fitness for Duty evaluation (Tr. 450-51; Pet. Ex. 6). Dr. Gille performed the evaluation on July 25, 2023, and in a report dated August 11, 2023 deemed respondent unfit for duty (Pet. Ex. 6). She found that respondent "exhibits acute psychiatric symptoms indicative of psychosis" and "endorses paranoia [and] delusions of persecution" (Pet. Ex. 6; Tr. 64). She also found that respondent's current symptoms "create a disruptive and hostile work environment and [that] she is a potential threat to herself and others" (Pet. Ex. 6). She concluded her report with a diagnostic impression of "delusional disorder, persecutory type," which she explained is "a psychiatric disorder where someone holds a false belief that's . . . strongly held despite contrary evidence" (Tr. 70-71; Pet. Ex. 6).

In preparing her report, Dr. Gille relied on her interview with respondent, a review of the emails and text messages respondent sent to Lieutenant Boctor and others, a review of respondent's personnel profile, a telephone interview with Lieutenant Boctor, and a review of Dr. Rondeau's three evaluations of respondent (Pet. Ex. 6). Dr. Gille's report was endorsed by Dr. Adam Bloom, Director of the Department's Psychological Evaluation Section and a licensed psychologist, and Dr. Lokesh Reddy, the Department's Deputy Chief Surgeon and a licensed psychiatrist (Pet. Ex. 6). Dr. Bloom not only reviewed the report but also met with respondent, and determined that she was "psychologically unfit for the title of Associate Staff Analyst," reinforcing Dr. Gille's conclusion (Pet. Ex. 6; Tr. 110).

According to Dr. Gille, respondent is not unfit for duty because of her belief in witchcraft (Tr. 94). "[T]his is not a case of discriminating against someone because of their religious beliefs," as respondent is free to have "whatever religious beliefs [she] want[s]" (Tr. 95). What renders respondent unfit is how she conducted herself in the work environment based on those beliefs (Tr. 95). Her delusions are related to her employment with the Department, and she acted on these delusions by confronting colleagues, taking photographs of people without their consent, messaging her supervisor, and misusing department resources, all of which impacts her ability to do her job (Tr. 64, 71). Because respondent's delusions are ongoing, Dr. Gille maintained that her August 2023 diagnostic impression still stands (Tr. 93-94).

*Respondent's Evidence*

Respondent testified on her own behalf, in narrative form, providing details about her educational, professional, and personal background. She holds an undergraduate degree from New York University, a law degree from New York Law School, and is a licensed attorney (Tr. 543, 622, 630). She was married, but her husband, who also worked in law enforcement, died in April 2022 (Tr. 612, 636). She does not think of herself as religious, but in the South, where she is from, "everyone goes to church" and it is commonplace to quote scripture, or reference God or the devil (Tr. 524-25).

Respondent began experiencing "weird" occurrences around July 2021, when she was still working in the Project Management Office (Tr. 536-37). These occurrences took place both in and outside of work (Tr. 536-541). For example, she would sometimes smell odors such as cigarettes, "but no one would be smoking" (Tr. 537). She once observed her colleagues "walk out of the office like zombies" and look at her, even though she "hadn't even said anything to them" (Tr. 538). At home, her husband was "acting very strange and it sometimes felt like he wasn't who he was or who he was supposed to be" (Tr. 538). These experiences would "go away with prayer" (Tr. 538).

Things became "really strange" in 2022, which was the year of her husband's passing (Tr. 540, 612). Respondent felt that her professional progress was being blocked (Tr. 544). She was slowly being removed from projects and "started having a lot of problems at work" (Tr. 541-42). She also experienced additional "unexplained events," which continued into 2023 (Tr. 547). For example, she heard chanting inside One Police Plaza, had various personal items stolen from her,

and continued to smell strange odors near her desk at work, including "dog urine, a man's butt . . . feces, [and a] garbage can" (Tr. 623, 654). She also observed a colleague and his spouse step out of the office and return with green pupils, "not the traditional green that you find on the human body," but rather, the color of "a witch's cat's eyes" (Tr. 664-65). She discussed these occurrences with a work acquaintance, who informed her that the Department might be engaging in "dark arts" (Tr. 619).

Respondent also experienced what she described as "hacking" or "interference," which continues to the present day (Tr. 690). She routinely encountered technical difficulties when using data analytics software or running reports in the office (Tr. 691). When saving her work, her "edits or revisions would be undone," and when printing legal research, "the output [would have] absolutely nothing to do with the case" (Tr. 692). She also experienced hacking when applying for jobs with other agencies (Resp. Ex. AH). She was told by her work acquaintance that her colleagues wanted to interfere with her ability to work because they were jealous of her (Tr. 688, 690-91). Respondent concluded that the Department was attempting to "sabotage her career" and "block [her] advancement" (Pet Ex. 5; Tr. 706-07). She reported the hacking issues not only to Lieutenant Boctor, but also to IAB, as well as "the FBI" (Tr. 695-96).

Respondent believes that this Section 72 proceeding is one of the "tools that have been used" by the Department to "hurt" her (Tr. 578). She believes that her administrative transfers within the Department, her mandatory fitness for duty examinations, and the "hacking" she continues to experience, especially when applying for jobs with other agencies, are other such "tools" (Tr. 566-68, 578-79). Respondent denies having a mental disability and has not sought treatment (Tr. 54, 85).

***Respondent's Defenses were Unavailing***

Throughout the proceedings, as well as in a motion to dismiss presented during closing arguments, respondent maintained that the petition should be dismissed because Dr. Gille is not a licensed psychologist, and is therefore unqualified to be a "medical officer" under Section 72. Respondent also challenged Dr. Gille's professional background, as well as the thoroughness of her examination, arguing that she lacked a sufficient basis for her diagnosis (Tr. 15-16, 104-05, 825-26). These arguments are unfounded.

Section 72 provides, "[when] in the judgment of an appointing authority an employee is unable to perform the duties of his or her position by reason of a disability . . . the appointing authority may require such employee to undergo a medical examination *to be conducted by a medical officer selected by the civil service department or municipal commission having jurisdiction*." Civ. Serv. Law § 72(1) (Lexis 2024) (emphasis added). There is no specific language governing the selected medical officer's qualifications.

A Level 1 psychologist in the Department's psychological evaluation section, Dr. Gille performs "fitness for duty" evaluations of members of service (Tr. 56, 60). She does not have a license, but Level 1 psychologists in the Department are not required to have one, as they work under licensed psychologists who review their recommendations (Tr. 60-61). Indeed, the Department employs many unlicensed Level 1 psychologists to perform fitness evaluations (Tr. 61).

Dr. Gille holds a PhD in Clinical Forensic Psychology (Pet. Ex. 22; Tr. 57). She has been employed as a Level 1 Psychologist for the Police Department since February 2021, performing fitness for duty evaluations for uniformed and civilian members of service (Pet. Ex. 22; Tr. 60). She completed her post-doctorate fellowship at Herald Square Psychology, where, because she is not licensed, she applied for and obtained a limited permit to do clinical therapy work (*Id.*). Prior to her fellowship, she served as an associate psychologist at Sing Sing Correctional Facility (Pet. Ex. 22; Tr. 59).

Dr. Bloom and Dr. Reddy, a licensed psychologist and psychiatrist respectively, endorsed Dr. Gille's report, thus rectifying any perceived defect that her lack of a license might present (Pet. Ex. 6). Respondent also questioned Dr. Bloom's credentials and examination methods, arguing that she searched for his license on December 12, 2023, with no results, and that she "did not at any point in time have an in depth discussion" with him (Tr. 107, 109, 614; Resp. Ex. V). In response, petitioner produced Dr. Bloom's psychology license information, which shows that he has been duly licensed since January 2, 1995 (Pet. Ex. 24). I am not persuaded by respondent's challenges to the credibility and competence of Dr. Gille and Dr. Bloom.

Respondent also claimed that in bringing this action, the Department was violating her right to practice her religion and "infringing on [her] personal beliefs protected by the First Amendment" (Tr. 820). The record does not support this claim. There is no credible evidence

that the Department discriminated against respondent based on her beliefs or prevented her from practicing her religion.

Petitioner does not allege that respondent is unfit for duty because of her religious beliefs. Petitioner's claim, rather, is that she is unfit because she acts on those beliefs, disrupting the workplace, neglecting her duties, and threatening to harm others (ALJ. Ex. 1).

***Petitioner proved that respondent is unfit***

Petitioner has the burden of proving the charges by a preponderance of the credible evidence. *See Dep't of Correction v. Hall*, OATH Index No. 400/08 at 2 (Oct. 18, 2007), *adopted*, Comm'r Dec. (Nov. 2, 2007), *aff'd*, NYC Civ. Serv. Comm'n Item No. CD 08-33-SA (May 30, 2008). Preponderance has been defined as "the burden of persuading the trier of fact that the existence of a fact is more probable than its non-existence." *Prince, Richardson on Evidence* § 3-206 (Lexis 2008); *see also Rinaldi & Sons, Inc. v. Wells Fargo Alarm Service, Inc.*, 39 N.Y.2d 191, 196 (1976). "If the evidence is equally balanced, or if it leaves the [trier of fact] in such doubt as to be unable to decide the controversy either way, judgment must be given against the party upon whom the burden of proof rests." *Prince, Richardson on Evidence* § 3-206. Relevant factors in assessing credibility include demeanor, consistency of a witness's testimony, supporting evidence, witness motivation, bias or prejudice, and the degree to which a witness's testimony comports with common sense and human experience. *Dep't of Sanitation v. Menzies*, OATH Index No. 678/98 at 2-3 (Feb. 5, 1998), *aff'd*, NYC Civ. Serv. Comm'n Item No. CD 98-101-A (Sept. 9, 1998).

I found Lieutenant Boctor, Mr. Mamakas, and Dr. Gille to be credible witnesses. They each testified in a straightforward and detailed manner about their interactions with and impressions of respondent, and none of them appeared to have a motive to fabricate or exaggerate their experiences. Dr. Gille provided thorough explanations for her medical conclusions, which were affirmed by Dr. Bloom and Dr. Reddy, and Lieutenant Boctor and Mr. Mamakas appeared genuinely concerned about respondent's mental health and expressed a desire for her to seek treatment.

Respondent impressed me as intelligent and self-assured. She demonstrated competence with respect to trial practice and procedures. However, her testimony at times lacked credibility and rationality. Although I found that she sincerely believed in the veracity of her narrative, she

provided mostly unsubstantiated accounts of occurrences she tied to the Department's practice of witchcraft.

To prevail under section 72 of the Civil Service Law, petitioner must prove by a preponderance of the evidence that respondent suffers from a disability, she is currently unable to perform her job duties, and her inability to perform those duties is caused by her disability. *Police Dep't v. A.A.*, OATH Index No. 2183/14 (June 30, 2015). "The focus of the section 72 proceeding is on the employee's current fitness and ability to perform her job duties, not on her past condition or work performance." *Admin. for Children's Services v. Papa*, OATH Index No. 1392/07 at 10 (Mar. 30, 2007). "Past performance is relevant only to the extent that it is probative of respondent's present condition and future conduct." *Police Dep't v. A.R.,* OATH Index No. 772/22 at 5 (Mar. 8, 2022), *adopted*, Comm'r Dec. (Mar. 22, 2022) (citing *Admin. for Children's Services v. J. M.,* OATH Index No. 3350/09 at 4 (Apr. 5, 2010) and *Housing Auth. v. Dave,* OATH Index No. 138/95 at 5 (Aug. 12, 1994), *aff'd*, NYC Civ. Serv. Comm'n Item No. CD 95-72-4 (Oct. 11, 1995)).

Here, petitioner provided credible evidence from multiple medical officers to support its claim that respondent suffers from a delusional disorder that prevents her from performing her job duties as an ASA (Pet. Ex. 6). Respondent submitted no medical evidence to rebut petitioner's claim. Instead, she offered a foundationless self-assessment of her mental health and challenged the credentials and evaluation methods of the medical officers who deemed her unfit.

Employees have been placed on Section 72 disability leave under similar circumstances. For example, in *Admin. for Children's Services v. Anonymous*, OATH Index No. 2619/11 at 7 (Dec. 30, 2011), a psychiatrist found that a principal administrative associate suffered from a delusional disorder that affected her ability to work. The disorder caused her to mistakenly believe that co-workers and strangers were calling her offensive names related to her sexuality. *Id.* at 2-3. The respondent denied that she suffered from delusions but provided no medical evidence to rebut the agency's claim. In sustaining the petition, the ALJ noted the respondent's failure to offer credible medical evidence and instead "attached considerable weight" to the opinion of the agency's psychiatrist. *Id.* at 5. The ALJ also found troubling the fact that the respondent "fail[ed] to acknowledge her delusion." *Id.* at 7. *See also A.R.*, OATH 772/22 at 6 (finding a traffic enforcement agent unfit to perform the duties of her title when she presented no medical evidence to refute the findings of the agency's medical officers); *A.A.,* OATH 2183/14 at 11 (finding a traffic

enforcement agent unfit to perform her duties, where she "did not present any expert medical testimony to support her claim that she was fit for full duty").

With no contradictory medical evidence, petitioner's medical reports should be given substantial weight. Dr. Gille provided clear and credible testimony to explain her findings, and her report was endorsed by two licensed practitioners. I therefore credit the unrebutted findings of Drs. Gille, Reddy, and Bloom that respondent has a delusional disorder that presently renders her unable to perform the duties of an ASA.

In addition to unrefuted medical evidence, petitioner also presented credible witness testimony and documentary evidence to establish that respondent repeatedly acted on her delusions, disrupting the workplace, decreasing her supervisor's productivity as well as her own, and causing several colleagues to feel uncomfortable or fear for their safety. Respondent's actions are "probative of [her] present condition and future conduct." *See A.R.,* OATH 772/22 at 5. Petitioner demonstrated that her continued belief that she is the target of the Department's witchcraft program prevents her from doing her job, and her delusions, if left unaddressed, pose a significant risk to the Department.

Most of respondent's testimony, and much of her documentary evidence, centered around her belief that the Department is practicing witchcraft against her and harassing her. Her trial exhibits included: a "Prayer of Release for Freemasons and their Descendants" (Resp. Ex. AE); a June 20, 2014 *New York Times* article about a former NYPD officer who claims to exorcise demons (Resp. Ex. I); screenshots of various computer malfunctions (Resp. Ex. AH); psychology research (Resp. Exs. B, C, M, AJ); and a business card respondent found in her husband's garage, which belonged to a Department of Sanitation employee she had never met (Resp. Ex. AA). Unlike a medical report assessing her mental fitness, this evidence does not support respondent's contention that she is able to perform the duties of an ASA. On the contrary, it tends to demonstrate an illogical thought process that further underscores petitioner's claims of unfitness.

Respondent's delusions, which she denies she has, affect her ability to perform her job duties, and she presented no medical evidence reaching a different conclusion.

For these reasons, I find that petitioner has established that respondent suffers from a disability, that she is currently unable to perform her job duties as an ASA, and that her inability to perform those duties is caused by her disability. Accordingly, respondent should be placed on a leave of absence pursuant to section 72 of the Civil Service Law.

## FINDINGS AND CONCLUSIONS

Petitioner established that respondent suffers from a disability that prevents her from performing her job duties as an Associate Staff Analyst.

## RECOMMENDATION

I recommend that respondent be placed on a leave of absence pursuant to section 72 of the Civil Service Law.

Tiffany Hamilton
Administrative Law Judge

October 8, 2024

SUBMITTED TO:

**THOMAS G. DONLON**
*Commissioner*

APPEARANCES:

**BRIAN MCCAFFREY, ESQ.**
**ASYA ABBAS, ESQ.**
**NICOLE MOCCIO, ESQ.**
Attorneys for Petitioner

**ANONYMOUS**
Self-represented respondent

THE POLICE COMMISSIONER
CITY OF NEW YORK

October 15, 2024

**VIA EMAIL**
Tiffany Hamilton
Administrative Law Judge
Office of Administrative Trials and Hearings
100 Church Street, 12th Floor
New York, New York 10007
THamilton@oath.nyc.gov

Re: Police Dep't v. Anonymous.
OATH Index No. 582/24 (Decided Oct. 8, 2024)

Dear Judge Hamilton:

A copy of your October 8, 2024, Report and Recommendation was forwarded to this office following the leave for ordinary disability proceeding pursuant to Section 72 of the New York Civil Service Law.

After reviewing the Report and Recommendation and Respondent's comments regarding the Report and Recommendation, I agree with the finding that the Respondent Shymansky is presently unfit to perform the duties of her current position of Associate Staff Analyst and the recommendation to place her on a leave of absence.

Sincerely,

Thomas G. Donlon
Interim Police Commissioner

cc. Naomi Ricketts
OATH Trials Division
Nricketts@oath.nyc.gov

1 Police Plaza, New York, NY 10038 • 646-610-5410 • Fax: 646-610-5865
Website: http://nyc.gov/nypd

Gmail **Demia Wilburn <[redacted]**

## 24-0582 - Police Department v. Anonymous - Report and Recommendation

5 messages

**Ricketts, Naomi** <NRicketts@oath.nyc.gov> Tue, Oct 8, 2024 at 4:59 PM
To: "MCCAFFREY, BRIAN" <BRIAN.MCCAFFREY@nypd.org>, Demia Wilburn [redacted]

Dear Parties,

On behalf of Hon. Tiffany Hamilton, attached is the Report and Recommendation for the above-referenced matter.

Additionally attached are the transcripts of the trial held on May 21, 2024, May 23, 2024, and May 29, 2024.

If you have any questions or require further assistance regarding this report, please contact me.

Best,

*Naomi Ricketts*

Confidential Secretary, Trials Division

Office of Administrative Trials and Hearings

100 Church Street, 12th Floor

New York, New York 10007

Nricketts@oath.nyc.gov

**Office:** (212) 933-3052 **Cell:** (929) 810-5193

**4 attachments**

**24-0582 - Police Department v. Anonymous - RR Oct 8_24.pdf**
944K

**24-0582 - 05-21-24 - TH - Vol. I.pdf**
884K

**24-0582 - 05-23-24 - TH - Vol. II.pdf**
696K

**24-0582 - 05-29-24 - TH - Vol. III.pdf**
661K

**Demia Wilburn** [redacted] Wed, Oct 9, 2024 at 12:35 AM
To: "Ricketts, Naomi" <NRicketts@oath.nyc.gov>
Cc: "Hamilton, Tiffany (OATH)" <thamilton@oath.nyc.gov>, "MCCAFFREY, BRIAN" <Brian.mccaffrey@nypd.org>, thomas.donlon@nypd.org
[redacted]

To All Parties:

Thank you for your email. I am not surprised by the decision. As of 10:35 AM on 10/08, I was drafting a Notice of Claim against the City in which I noted that the decision was not issued and was waiting in abeyance to discredit my claim. I was not wrong.

By and through the hacking, I was prevented from filing the claim ahead of the decision being issued. The truth is that you failed to establish a disability pursuant to Section 72, much like the letter regarding my status was never sent. But I welcome the opportunity to show off my litigation skills.

Commr. Donlon:

I wish you much success as you navigate this political storm. I am sure you will do well. Onwards and forwards.

Best,
ASA Demia Shymansky

On Tue, Oct 8, 2024 at 4:59 PM Ricketts, Naomi <NRicketts@oath.nyc.gov> wrote:

> Dear Parties,
>
> On behalf of Hon. Tiffany Hamilton, attached is the Report and Recommendation for the above-referenced matter.
>
> Additionally attached are the transcripts of the trial held on May 21, 2024, May 23, 2024, and May 29, 2024.
>
> If you have any questions or require further assistance regarding this report, please contact me.
>
> Best,
>
> *Naomi Ricketts*
>
> Confidential Secretary, Trials Division
>
> Office of Administrative Trials and Hearings
>
> 100 Church Street, 12th Floor
>
> New York, New York 10007
>
> Nricketts@oath.nyc.gov
>
> **Office:** (212) 933-3052 **Cell:** (929) 810-5193

---

**postmaster@nypdonline.onmicrosoft.com** <postmaster@nypdonline.onmicrosoft.com> Wed, Oct 9, 2024 at 12:35 AM
To: [redacted]

Office 365

Your message to thomas.donlon@nypd.org couldn't be delivered.

thomas.donlon wasn't found at nypd.org.

| demia.wilburn | Office 365 | thomas.donlon |
|---|---|---|
| **Action Required** | | Recipient |

Unknown To address

## How to Fix It

The address may be misspelled or may not exist. Try one or more of the following:

- Send the message again following these steps: In Outlook, open this non-delivery report (NDR) and choose **Send Again** from the Report ribbon. In Outlook on the web, select this NDR, then select the link "**To send this message again, click here.**" Then delete and retype the entire recipient address. If prompted with an Auto-Complete List suggestion don't select it. After typing the complete address, click **Send**.
- Contact the recipient (by phone, for example) to check that the address exists and is correct.
- The recipient may have set up email forwarding to an incorrect address. Ask them to check that any forwarding they've set up is working correctly.
- Clear the recipient Auto-Complete List in Outlook or Outlook on the web by following the steps in this article: Fix email delivery issues for error code 5.1.10 in Office 365, and then send the message again. Retype the entire recipient address before selecting **Send**.

If the problem continues, forward this message to your email admin. If you're an email admin, refer to the **More Info for Email Admins** section below.

*Was this helpful? Send feedback to Microsoft.*

---

## More Info for Email Admins

*Status code: 550 5.1.10*

This error occurs because the sender sent a message to an email address hosted by Office 365 but the address is incorrect or doesn't exist at the destination domain. The error is reported by the recipient domain's email server, but most often it must be fixed by the person who sent the message. If the steps in the **How to Fix It** section above don't fix the problem, and you're the email admin for the recipient, try one or more of the following:

**The email address exists and is correct** - Confirm that the recipient address exists, is correct, and is accepting messages.

**Synchronize your directories** - If you have a hybrid environment and are using directory synchronization make sure the recipient's email address is synced correctly in both Office 365 and in your on-premises directory.

**Errant forwarding rule** - Check for forwarding rules that aren't behaving as expected. Forwarding can be set up by an admin via mail flow rules or mailbox forwarding address settings, or by the recipient via the Inbox Rules feature.

**Recipient has a valid license** - Make sure the recipient has an Office 365 license assigned to them. The recipient's email admin can use the Office 365 admin center to assign a license (Users > Active Users > select the recipient > Assigned License > Edit).

**Mail flow settings and MX records are not correct** - Misconfigured mail flow or MX record settings can cause this error. Check your Office 365 mail flow settings to make sure your domain and any mail flow connectors are set up correctly. Also, work with your domain registrar to make sure the MX records for your domain are configured correctly.

For more information and additional tips to fix this issue, see Fix email delivery issues

for error code 5.1.10 in Office 365.

## Original Message Details

| | |
|---|---|
| Created Date: | 10/9/2024 4:35:37 AM |
| Sender Address: | [redacted] |
| Recipient Address: | thomas.donlon@nypd.org |
| Subject: | Re: 24-0582 - Police Department v. Anonymous - Report and Recommendation |

## Error Details

| | |
|---|---|
| Error: | *550 5.1.10 RESOLVER.ADR.RecipientNotFound; Recipient thomas.donlon@nypd.org not found by SMTP address lookup* |
| Message rejected by: | BLAPR09MB7377.namprd09.prod.outlook.com |

## Notification Details

| | |
|---|---|
| Sent by: | *BLAPR09MB7377.namprd09.prod.outlook.com* |

## Message Hops

| HOP | TIME (UTC) | FROM | TO | WITH | RELAY TIME |
|---|---|---|---|---|---|
| 1 | 10/9/2024 4:35:49 AM | | mail-pg1-f170.google.com | SMTP | 12 sec |
| 2 | 10/9/2024 4:35:49 AM | mail-pg1-f170.google.com | SA2PEPF00002250.mail.protection.outlook.com | Microsoft SMTP Server (version=TLS1_3, cipher=TLS_AES_256_GCM_SHA384) | * |
| 3 | 10/9/2024 4:35:49 AM | SA2PEPF00002250.namprd09.prod.outlook.com | CY5PR09CA0028.outlook.office365.com | Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) | * |
| 4 | 10/9/2024 4:35:50 AM | CY5PR09CA0028.namprd09.prod.outlook.com | BLAPR09MB7377.namprd09.prod.outlook.com | Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) | 1 sec |

## Original Message Headers


```
Received: from CY5PR09CA0028.namprd09.prod.outlook.com (2603:10b6:930:1::9) by
 BLAPR09MB7377.namprd09.prod.outlook.com (2603:10b6:208:2a0::19) with
 Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.8026.24; Wed, 9 Oct
 2024 04:35:50 +0000
Received: from SA2PEPF00002250.namprd09.prod.outlook.com
 (2603:10b6:930:1:cafe::d7) by CY5PR09CA0028.outlook.office365.com
 (2603:10b6:930:1::9) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.8048.17 via Frontend
 Transport; Wed, 9 Oct 2024 04:35:49 +0000
Authentication-Results: spf=pass (sender IP is 209.85.215.170)
 smtp.mailfrom=gmail.com; dkim=pass (signature was verified)
 header.d=gmail.com;dmarc=pass action=none header.from=gmail.com;compauth=pass
 reason=100
Received-SPF: Pass (protection.outlook.com: domain of gmail.com designates
 209.85.215.170 as permitted sender) receiver=protection.outlook.com;
 client-ip=209.85.215.170; helo=mail-pg1-f170.google.com; pr=C
Received: from mail-pg1-f170.google.com (209.85.215.170) by
 SA2PEPF00002250.mail.protection.outlook.com (10.167.242.132) with Microsoft
 SMTP Server (version=TLS1_3, cipher=TLS_AES_256_GCM_SHA384) id 15.20.8048.13
 via Frontend Transport; Wed, 9 Oct 2024 04:35:49 +0000
Received: by mail-pg1-f170.google.com with SMTP id 41be03b00d2f7-7e9f98f2147so2216747a12.1;
        Tue, 08 Oct 2024 21:35:49 -0700 (PDT)
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed;
        d=gmail.com; s=20230601; t=1728448549; x=1729053349; darn=nypd.org;
        h=cc:to:subject:message-id:date:from:in-reply-to:references
         :mime-version:from:to:cc:subject:date:message-id:reply-to;
        bh=hCY95M22cRWpPj/sY0SYO16i7+zpj0yFuY5oFe7dZUM=;
        b=HM5vRK0VNzXiJb8bDxfPxVpSli/NPd8y2SnUZlEJc/7sAj22hlKXNqnHoE+LGDyihn
         V33kUw2H8JP2TUhjS8D/dvYCJAjzfAiK3dwCXpRMSoTjaqsQHhlyToKuDCQd5cKFsgz0
         vFOMeZKPO62un+ED5MPTHARCbm3GZrSC4zc9cUqxO6tLLFnSFYNS/F2zdAxGQPiaoDIS
         8B/H4QVipWBPzHJ+26yM3dkppLhx1Qq0bADkEeiLk5ICx2bwhbLON/nZ7LhqKpy6W2Iy
         ynMDeGJm+9BNraRRfPin8v9jlDK0Bhp0LDijeJoUClzDc4BPdgtlrjvNzYo9XfkNIF/A
         KtfQ==
X-Google-DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed;
```

d=1e100.net; s=20230601; t=1728448549; x=1729053349;
h=cc:to:subject:message-id:date:from:in-reply-to:references
:mime-version:x-gm-message-state:from:to:cc:subject:date:message-id
:reply-to;
bh=hCY95M22cRWpPj/sY0SYO16i7+zpj0yFuY5oFe7dZUM=;
b=q/wm+4yT8KBWidL5CkVm3Ss1XvCqJMIqYWR+Bip/mPNKuQGCx7stsj2474cqWn0iBD
QEyBUxGz+z2cizAPaE2zByffNIkF+ZlLzScq61LVj/B2bxBsHAoturcz68PBKl1OSeFG
4WW2LzVt6kFPIoylq8bxzJKJWfqEwENfPY0vthm/0MH+NOtH0CaHglGyISe/vFlOM5g6
0RnI40ILH12baKY25X4Ec7CzgEC/c8N2xQaMjruaAqdpXGI1w9EmX+5xAGt9yP36Yaf2
EwUmthWM9TZsDSFD322XwvxL/h8X85E7+vOxnjiCAoVU1cuP+VrJp9Pc5yA+02XJ4I1a
tvkA==
X-Forwarded-Encrypted: i=1; AJvYcCWxpcsTq8ffnRHdKwnALn99dtqtSH4uAyovhrRq/ONFwEpV6Jkrmfi2CGRhan4DDFeLdno
mmXoHnjHePbQPKnE=@nypd.org, AJvYcCWzyNL+pm2rnvtduh+wuqULNq/yeXtwH9KIpq3tswE/4QjAqiNa98kHQmM7vvbWBEA1uxMIC0iQYG/
l5UEoZg==@nypd.org
X-Gm-Message-State: AOJu0YxJLa16PNykgydl/7kt/TVeaMKq5lelrQ3NUGtcA905dJ4g52cn
DTASqNGW6kxAtqzZf8cr6G+wMRH07hXNDLWSO/KvgGBofjHoYxfYZDwUtUMUSa41Bs/AF1YCIVr
rDzUWq4mq2WOdEYo0YgOI3AWQ/QM=
X-Google-Smtp-Source: AGHT+IG1IU/uwBpSWySb078ZrUJfXXRURzBKe4TPC1H2Oya5jTfewg9wloqwqw4oXNcMu3eJ/b0+pYjv4dZIHqwAqKY=
X-Received: by 2002:a17:90a:ea91:b0:2cc:ef14:89e3 with SMTP id
98e67ed59e1d1-2e2a233a238mr1453863a91.15.1728448548608; Tue, 08 Oct 2024
21:35:48 -0700 (PDT)
MIME-Version: 1.0
References: <SA1PR09MB9690C1EBE11340CE580E7535897E2@SA1PR09MB9690.namprd09.prod.outlook.com>
In-Reply-To: <SA1PR09MB9690C1EBE11340CE580E7535897E2@SA1PR09MB9690.namprd09.prod.outlook.com>
From: Demia Wilburn <demia.wilburn@gmail.com>
Date: Wed, 9 Oct 2024 00:35:37 -0400
Message-ID: <CANOD0zeoKq5Trc3jSNZ0zxnsQCUO-Qn1PRORkecaDcL86R4pqg@mail.gmail.com>
Subject: Re: 24-0582 - Police Department v. Anonymous - Report and Recommendation
To: "Ricketts, Naomi" <NRicketts@oath.nyc.gov>
CC: "Hamilton, Tiffany (OATH)" <thamilton@oath.nyc.gov>, "MCCAFFREY, BRIAN" <Brian.mccaffrey@nypd.org>,
thomas.donlon@nypd.org
Content-Type: multipart/related; boundary="000000000000c0bc84062403c907"
Return-Path: demia.wilburn@gmail.com
X-EOPAttributedMessage: 0
X-EOPTenantAttributedMessage: 2b9f57eb-78d1-46fb-be83-a2afdd7c6043:0
X-MS-PublicTrafficType: Email
X-MS-TrafficTypeDiagnostic: SA2PEPF00002250:EE_|BLAPR09MB7377:EE_
X-MS-Office365-Filtering-Correlation-Id: f6617410-6134-407a-b380-08dce81bd9e9
X-MS-Exchange-AtpMessageProperties: SA|SL
X-NYPD-External_Link_Test: Rule Triggered
X-Microsoft-Antispam: BCL:0;ARA:13230040|7093399012;
X-Microsoft-Antispam-Message-Info:
=?us-ascii?Q?Xz3GDaKcXCd3wpryyTElQjqNDOA9vFqVhOSlV2Js+zw6G/CgoXkeq/G2KGTP?=
=?us-ascii?Q?9SN/99PwkZUs4cU8qZcLQf6m/Rjr+qW0Xq9OgGXjKJfztxw3+XLwZqKCRbJ7?=
=?us-ascii?Q?eNWBEcat+PutUwkzyvabZx749nRLJ4R9/h68k/KZ0i5StV8Of/NoScAH2umh?=
=?us-ascii?Q?lQegoB6ikDTzEjrPyWQJeYHjrcK+2uCqtaRQNGPTzc8alZFD5JYQy8G8c13E?=
=?us-ascii?Q?QuaqzBgTD6b013xiPAQ7KNcP+1cWMkM5FbbI91G+CifgPYBMhzvmEw/hmBF1?=
=?us-ascii?Q?CN1Jvi8DUab7jfK1WREFxY8eo3dXmTinv/lPsjwIr3XrW12A1Nv0RIHAi/xO?=
=?us-ascii?Q?2aupuK5NZtd1ZHRWa87EKdD4EczxLA83x6fVXlBAxUUyzOpXZ7b8MYYezxIh?=
=?us-ascii?Q?b5tzyzN8TF12mKkO0uj90xLmJqapWoTTDT+X2ieMIGNdiPvKCgzwl5eGOjof?=
=?us-ascii?Q?32vwNw/tQ7hETBVkjYJw+k7A4PsTWDjl2INw291lNxMz3K7OIm5mKPDzqMMR?=
=?us-ascii?Q?Jyg5xCVpUvNw9Fqz7WbUAm9S1ATCU7lLdIGhzopCQY/Ts1AKF4PgeDIQKU2U?=
=?us-ascii?Q?/Qb1XQg5kShtUSD+PP8GA0ItCRPWV307hu19krOjqne2+jGexz9zqLUhsMZI?=
=?us-ascii?Q?WZhq23hJM2wTagaA9i9MESRy99YiFN9A1zmRrUJyO5guSQMLIb/f2j0fdGIr?=
=?us-ascii?Q?yHXE/OA40dDfr/cUs9epP75Qq8Azbyc1xWxE/fTQ3WsSifof8PSAwgxAULhS?=
=?us-ascii?Q?744KFiMcwDd79QacfN9oda1KILNTC1P9Bjg7rO6tD2OGQfO4cKDsuQIoZUil?=
=?us-ascii?Q?NKqz5R7ZWbWHXy8TCj/ukHK662POrEFTtk9PkwDniICRmp82oQ+m3Wnt9sAj?=
=?us-ascii?Q?f2/Uywse1CD57ZUf5qBNaT2gviw4Ha4uq4lOkjJRhLDIKhf8X/tH1k+Tvzut?=
=?us-ascii?Q?8VTUgXyjUdWV1j/gq1F1kQE6nKMp6d76UCf4QJIsxA8Hx78tqp6iVun+ANMl?=
=?us-ascii?Q?Co9Ve5p11OMQ/IDgcR2ZnaGfrJfbtEkcDv6q5AML8SOWn8mr2e5To9V7hSTM?=
=?us-ascii?Q?D+WL1V/dgfaCJr23v586AZBrNQPh9ZRpexZ/Y/gHCLxfhZfQ2PZ9KbdjVhOZ?=
=?us-ascii?Q?zYe0jZo5SRP0AOjXrChISG8aW/qlZZG2dxAgfTLWsZxNv/qKHaMz5v67n/a8?=
=?us-ascii?Q?k/BuqSIMNP2eBfDtJxuGi9JP3tqlUNpcCTzxbdA2hz+tSaLXCxqUm3UiB3hf?=
=?us-ascii?Q?0t4+RzZxYfp1T/2KE7ZzALxZcF+Hp4oFDExV5t4aWIoCIyUTvKFdnmnqFaAP?=
=?us-ascii?Q?eigdWZ/A3nz6eT0d83WGXx0awKkbI33wQlqxnxxSVVu3RRcdqClncfkB5HsC?=
=?us-ascii?Q?/vW01LbOMyxBrRuIf77T06jlt9Bi+3xTQVMw4U7wwGXdpKMWEzcYtkz5J3Bv?=
=?us-ascii?Q?CfIsD90RSiWrE5HpfUYUA2eDcYh/cajOlNDDIGiLqzwZiMGAoLwlPVjtYP3t?=
=?us-ascii?Q?os2B+2BxX9qH0tPiOpY9f8jMCymiNrYUTt4pNeuJbivFXJirlwIJMPXfXxZb?=
=?us-ascii?Q?8UNBpXCDTxlDJip06xQ1oo5HNVVuk2gSE+yShTFOQxFfgvq3L9vpqn9ueS9V?=
=?us-ascii?Q?rtuEzoYNo3BaBYpTKTxAtV85Jz6KqSMCE62RMhhkm/PReYiU2rGCXRIcFnds?=
=?us-ascii?Q?m3O2i1zDlNM2AawsqyYHrYAUqbHiivfE02oc9UB77CAwpI1ax41FquhHprF9?=
=?us-ascii?Q?4ttoecHda1Qnc3SfdpDVT6ixVtczg7s7S8kUux9Td1t4j7VXZlubuV6scAnt?=
=?us-ascii?Q?trzOyN+Xk/Gj9A=3D=3D?=
X-Forefront-Antispam-Report:
CIP:209.85.215.170;CTRY:US;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:mail-pg1-f170.google.com;PTR:mail-pg1-f170.
google.com;CAT:NONE;SFS:(13230040)(7093399012);DIR:INB;
X-MS-Exchange-CrossTenant-OriginalArrivalTime: 09 Oct 2024 04:35:49.7500
(UTC)
X-MS-Exchange-CrossTenant-Network-Message-Id: f6617410-6134-407a-b380-08dce81bd9e9
X-MS-Exchange-CrossTenant-Id: 2b9f57eb-78d1-46fb-be83-a2afdd7c6043
X-MS-Exchange-CrossTenant-AuthSource:
SA2PEPF00002250.namprd09.prod.outlook.com
X-MS-Exchange-CrossTenant-AuthAs: Anonymous