# EXHIBIT M

*(Miscellaneous Documents)*

THE CITY OF NEW YORK
OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS

P R E S E N T: TIFANNY HAMILTON
Administrative Law Judge

---

In the matter of:

POLICE DEPARTMENT

Petitioner,

Index No.
24-0582

- Against -

DEMIA SHYMANSKY

Respondent.

---

May 21st, 2024

Office of Administrative Trials
And Hearings
100 Church Street
New York, NY 10007

Volume I, Pages 1 - 344

could just -- could easily be interpreted as, I just don't -- I want to protect my privacy. It's not her grounds. But --

ALJ HAMILTON: I'll -- I will let you to ask a couple of questions, but please keep them brief.

MS. SHYMANSKY: Yes, Your Honor.

Q: So -- and you are familiar with the subject matter for HIPAA?

A: Yes.

Q: Okay. And people who -- in your experience, is it customary for patients to respond to questions if they want to protect their HIPAA rights?

A: Yeah.

Q: And in those situations where people want to protect their HIPAA -- HIPAA rights, they res -- do they respond to que -- to questions that the Department, you are -- having been there, ask them about their medical history?

A: They can, yeah.

Q: And if they answer those questions, would it be con -- in your experience, would it be a waiver of their HIPAA rights?

MR. MCCAFFREY: Objection. It's calling for a legal conclusion. Which is not --

MS. SHYMANSKY: I'll -- I'll -- I'll --

ALJ HAMILTON: It is calling for legal conclusion.

MS. SHYMANSKY: I will -- I will rephrase.

Q: In your treatment of these particular employees, are you

working for them, the employee, or the Department?
A: The Department. We're not treating anybody. I'm not treating anybody.
Q: So in your not treating anyone, you -- you technically do not have a doctor patient/relationship with that person?
A: Correct.
Q: I'd like to move on to Petitioner's 7, 42.
ALJ HAMILTON: Again, it is not paginated --
MS. SHYMANSKY: It is -- I'm sorry. It's dated May 31st, 2023.
A: Dr. Rondeau's report.
Q: It is, time starts 10:53 time end 11:05. I would like to go to mood.
A: I'm sorry.
Q: The mood section.
A: Of?
ALJ HAMILTON: Is it also 5/31?
MS. SHYMANSKY: Yes. It's dated --
MS. GILLE: 5/31/2023?
MS. SHYMANSKY: Yes.
MS. GILLE: I'm not --
MS. SHYMANSKY: And it's time start 10:53 time end in 11:05?
MS. GILLE: I'm not sure what you're reading. This is not my report. Okay.

office is located? Can you just draw it and what it looks like?

ALJ HAMILTON: I can't see it.

MS. ABBAS: Do -- you should put it on the chair? Is that better?

ALJ HAMILTON: You -- you can. I -- I -- I'm not a 100 percent happy with this sketching situation, only because I -- I think it's going to be difficult to capture as part of the record. You -- like I said, you can do a -- a rough drawing and dictate what you're doing. You can put it over there so that everybody is -- can -- can see it. But I'm going to ask that it's quite limited because like I said, this is not going to be entered into evidence.

MS. ABBAS: Okay. No problem. So we'll just continue on. And you --

MR. MCCAFFREY: That's fine. You can just to describe it, it's fine.

MS. ABBAS: Okay. So we'll just describe it.

ALJ HAMILTON: Okay. And then if -- if for -- why don't we start by describing it, and if you feel that a drawing is necessary to further clarify, I'll allow you to do that.

MS. ABBAS: Okay. Thank you, Your Honor.

ALJ HAMILTON: Thank you.

Q: Okay. When you left your office around 12:00 PM that day, and you testified that you saw the Respondent, what, if

You'll ask your follow up questions and then you will be dismissed. Okay?

MR. MAMAKAS: Okay

MR. MCCAFFREY: Thank you.

MS. ABBAS: Thank you, Your Honor.

ALJ HAMILTON: Thank you.

[OFF THE RECORD]

[ON THE RECORD]

ALJ HAMILTON: Okay, we're back on the record. I'm just going to ask, I know we had this discussion at the beginning of your examination, and after having heard the testimony and after having heard both sides questioning, I feel that it would be helpful to me to have you do the diagram so I can see what you're talking about a little bit better. And I can have Ms. Shymansky weigh in on this. So I know that this is sort of out of order, but I thought that the description would be enough for me. And as the trier of fact, I think I will be aided. We can do this very quickly. You'll have the opportunity to ask the witness questions. This is on re -- recross and -- I'm sorry, redirect and then on recross, you can also ask questions. But I want to have a complete record, and I wanted to do this before the witness leaves for the day, and I no longer have the opportunity. So are we all in agreement with this? Can we -- can we proceed that way? I know this was your intention to start it this

showed you what two feet looks like. There's no way for two people, a hallway to be that small, how do people pass each other in the hallway? So now I'm following him. And this is what's very interesting, is he starts to describe a situation where I start to challenge him on the legitimacy of what he's saying and then he says, well, I looked back and I saw that you weren't talking -- that you must have been talking to me because no one else was behind him. But there's a bend here, right? I'm now following him. There is a bend here. Can you see who's coming out of the bend? There are offices here, there are other points of egress here. So you don't know if this was true, whether I was in fact talking to you, but he believed it to be true. Yes? Then let's talk about the description. The description was wearing a woman's headband and I said, well, can anyone else in the Department be wearing? Yeah, other people could be wearing a head band. He didn't describe my race; he didn't describe my height. Let's be honest, if someone is less than average height, you probably notice them. You probably notice what they're wearing. He didn't -- especially if you felt threatened, you'd probably notice if I had eyeglasses, any type of eyewear. He didn't. Especially if you felt threatened. But most importantly you would notice that I was Black, especially if you felt threatened. Then it was the whole thing about the captain told him versus speaking with the

THE CITY OF NEW YORK
OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS

P R E S E N T: Tiffany Hamilton
Administrative Law Judge

---

In the matter of:

POLICE DEPARTMENT

Petitioner,

Index No.

24-0582

- Against -

DEMIA SHYMANSKY

Respondent.

---

May 29, 2024

Office of Administrative Trials
And Hearings
100 Church Street
New York, NY 10007

Volume III, Pages 605 - 844

LM Language Services, Inc.
103 Carnegie Center Suite 300 Princeton NJ 08540

# I N D E X



A P P E A R A N C E S:

PETITIONER'S REPRESENTATIVE
BRIAN MCCAFFREY, ESQ
POLICE DEPARTMENT
ONE POLICE PLAZA, RM 1406
NEW YORK NY 10038

RESPONDENT'S REPRESENTATIVE

# I N D E X

| PETITIONER'S WITNESS | DIRECT | CROSS | REDIR | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|

| RESPONDENT'S WITNESS | DIRECT | CROSS | REDIR | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| D. Shymansky | 611 | 652 | 795 | | |

## E X H I B I T S

| ALJ | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| 11. | | | 805 |

| PETITIONER | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| 24. and 25 | | 792 | 793 |

| RESPONDENT | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| AF. | Office of Criminal Justice Planning Research | 630 | 635 |
| AL. | Presentation | 646 | 647 |
| K. | Timeline of events between 2021-2023 | 648 | 648 |
| AJ. | | | 801 |
| AK. | Research from Cleveland Clinic | 802 | 804 |

[09:51:14]
[00:00:00]

ALJ TIFFANY HAMILTON: Good morning, everyone.

MR. BRIAN MCCAFFREY: Good morning, Your Honor.

ALJ HAMILTON: We are on the record in the ma -- thank you. We are on the record in the matter of the Police Department v. Demi -- Demia Shymansky. The OATH Index number is 240582, this is our third and final day of trial. We were in the process -- I'm sorry. Are other people hearing feedback?

MR. MCCAFFREY: Yes, I am, Your Honor.

ALJ HAMILTON: Okay. As always, if technological issues arise during the course of the proceedings, please just let me know. But I think -- by moving my mic, I think we should be okay. We were in the process of hearing Ms. Shymansky's narrative testimony. But before we get started, I'll take your appearances for the record, beginning with the Petitioner.

MR. MCCAFFREY: NYPD agency attorney Brian McCaffrey, One Police Plaza, New York, New York, 10038. I'm here today and assisted by my able co-Counsel.

MS. ASYA ABBAS: Good morning. Agency attorney Asya Abbas for the New York City Police Department, One Police Plaza, New York, New York, 10038. Good morning.

MS. NICOLE MOCCIO: Good morning. Agency attorney, Nicole Moccio, One Police Plaza, New York, New York, 10038.

ALJ HAMILTON: Thank you.

knew could be helpful. And so I would ask people who I knew.

Q: But isn't it true that you were instructed not to go to other floors to other unauthorized areas --

A: That was --

Q: -- at One Police Plaza?

A: -- time -- the timeline. That was only after I had gone to advocate's office.

Q: And that was? And when was that?

A: I cannot recall the time. I'd have to have my journal.

[OFF MIC CONVERSATION]

ALJ HAMILTON: Do you want to consult your title?

MS. SHYMASNKY: Oh, as far as like when I -- I don't -- I don't have my journal here. That was documented in my journal.

Q: So we can move on. I don't want -- just for time's sake. So -- so was there any other time where you went to places within the office within One Police Plaza where you weren't supposed to?

A: Where I wasn't supposed to, no.

Q: So you never tried to enter a CompStat meeting in 2022 -- 2022, I just need to confirm the date. But was-- did there -- you never tried to enter CompStat?

MS. SHYMANSKY: Your Honor, I'm going to object to this line of questioning with respect to its leading. It concerns a disciplinary matter, in which case I would want

to, even though there's a rep here, I do still have Weingarten Rights. So I would definitely want to talk to my union before we go into whether I attempted to enter a CompStat meeting. But if they want to ask me whether I spoke to the chief of Department to get permission to go to a CompStat meeting, I have no problem with that.

MR. MCCAFFREY: Your Honor, she entered an exhibit and with all the charges from the advocate's office about this incident, I would say she's waived anything Weingarten.

MS. SHYMANSKY: I'm not -- I did not waive Weingarten Rights just by virtue of submitting the exhibit. The exhibit was submitted for the sole purpose of showing that the Department issued charges that were baseless. I -- those doc -- the policy is accompanied by the contract, it's accompanied by the Department policy. It is also showing that I tried to address this issue and it was read and no -- and there was no response given.

MS. ABBAS: She clearly opened the door to --

MS. SHYMANSKY: I did not open the door.

MS. ABBAS: She clearly opened the door to this line of questioning based on the submission of the exhibits as well as her direct testimony that she -- it was one of the tools she testified on direct as well as in cross, as those charges were one of the tools being used to sabotage her, to harass her, to -- to persecute her.

MS. SHYMANSKY: Exactly. So that would speak to whether or not there -- whether or not I would believe, or it was legitimate -- legitimate for me to believe that the Department was somehow sabotaging my career, especially when it relates to delusional disorder. Delusional, as we know, is a false belief as was testified. So then that information was -- that evidence was admitted into the record to establish that my belief was not necessarily false.

MS. ABBAS: And I can-- certainly there was evidence already admitted into the record --

MS. SHYMANSKY: But asking me whether I attempted to go -- whether I -- asking whether I attempted to go into the CompStat office where I did not belong, would relate directly to the disciplinary proceeding. This would be another attempt for them to try to circumvent the hearing that I'm actually supposed to get and I haven't received that either. So I'm sorry that the advocate's office isn't here. But this is OATH. This is an advocate's office, and I'm not waiving my Weingarten Rights.

MR. MCCAFFREY: The -- the IAB report regarding these events is already in evidence. I'm -- just already in evidence. If the Court wants to -- if she's going to refuse to answer, the Court is certainly entitled to draw an inference on that.

ALJ HAMILTON: The IAB report, remind me of exhibit